Boyd J. Harrison appeals from a judgment for Brenda A. Morrow and Samuel R. Anderson on Harrison's complaint seeking to declare the shares of Morrow and Anderson in the estate of Alton Anderson, deceased, forfeited. We affirm.
 I. Factual Background
Alton Anderson died testate on March 24, 2000. For all purposes relevant to this appeal, his will named Morrow, Anderson, and Harrison as beneficiaries, [1] and nominated Ben J. Schillaci as the executor.
The will also contained the following paragraph:
 "E. Beneficiary Disputes. If any bequest requires that the bequest be distributed between or among two or more beneficiaries, the specific items of property comprising the respective shares shall be determined by such beneficiaries if they can agree, and if not, by my Executor. Any further dispute between or among the beneficiaries regarding distribution percentages or procedures shall permanently disqualify that person from any distribution. If a bequest is contested this share shall be distributed proportionately to the other distributee(s) listed as beneficiaries."
(Hereinafter referred to as "the in terrorem
provision.")[2]
On July 7, 2001, Morrow and Anderson filed an application to contest the will. Based on expert handwriting analysis, they alleged that the testator's signature was a forgery. On September 27, 2001, the probate court entered a judgment denying the contest, admitting the will to probate, and issuing letters testamentary to Schillaci. Morrow and Anderson appealed to the Winston Circuit Court, which affirmed the judgment of the probate court. On June 13, 2003, this Court affirmed *Page 459 
the judgment of the circuit court without an opinion.Morrow v. Estate of Anderson (No. 1020154),883 So.2d 272 (Ala. 2003)(table).
Subsequently, on November 19, 2003, Schillaci filed in the probate court a "petition for construction of will and instruction as to proper distribution of estate." The petition sought a construction of the in terrorem provision in the context of Morrow and Anderson's contest of the will. Specifically, it sought a determination as to "whether said contest of the will . . . caused [the] bequests to Brenda Morrow and Samuel R. Anderson to be forfeited and distributed to [Harrison]." On the motion of Morrow and Anderson, the administration of the estate was removed to the circuit court.
On February 23, 2004, Harrison filed a motion and complaint in intervention, alleging that the will contest operated as a forfeiture of Morrow's and Anderson's shares of the estate pursuant to the in terrorem provision. On March 2, 2004, Harrison's motion to intervene was granted. Harrison moved for a summary judgment. On October 3, 2006, the circuit court denied Harrison's summary-judgment motion and entered a judgment in favor of Morrow and Anderson, holding that the will contest did not violate the in terrorem provision, and, consequently, that no forfeiture had occurred. Harrison appealed.
 II. Discussion
On appeal, Harrison contends that the in terrorem
provision is unambiguous and plainly mandates a forfeiture. In other words, he insists that the proscriptions in the interrorem provision encompass the will contest commenced by Morrow and Anderson. Morrow and Anderson agree that the in terrorem provision is unambiguous, but contend that the proscriptions clearly do not include the will contest they prosecuted. If they do include the will contest, they contend, this Court should follow the lead of a number of other jurisdictions and hold that in terrorem clauses areper se unenforceable. We need not determine whetherin terrorem clauses are unenforceable in Alabama when their enforceability is specifically challenged, because we conclude that the will contest did not fall within the proscriptions of the in terrorem provision in this case.[3]
The resolution of this case turns on the construction of a document. "`[W]e apply a de novo review to a trial court's determination of whether a contract is ambiguous and to a trial court's determination of the legal effect of an unambiguous contract term.'" Young v. Pimperl,882 So.2d 828, 830 (Ala. 2003) (quoting Winkle-black v.Murphy, 811 So.2d 521, 525-26 (Ala. 2001)). We agree with the parties that there is no ambiguity in the provision at issue in this case. "An `instrument is unambiguous if only one reasonable meaning clearly emerges.'" Reeves CedarhurstDev. Corp. v. First Amfed Corp., 607 So.2d 184, 186
(Ala. 1992) (quoting Vainrib v. Downey, 565 So.2d 647,648 (Ala.Civ.App. 1990)). "When the language of a will is clear and unambiguous, the rules of construction cannot be employed to rewrite that will and put it at variance with the meaning of the language used by the testator." Windham v.Henderson, 658 So.2d 431, 434 (Ala. 1995). "[W]ords employed in a will are to be taken in their primary or ordinary sense and use, unless a different *Page 460 
meaning is indicated by the context and circumstances of the case. . . ." Wiley v. Murphree, 228 Ala. 64, 68,151 So. 869, 872 (1933).
In Kershaw, although we pretermitted, as we do here, discussion of the question of the enforceability of interrorem clauses, we nevertheless noted: "`Consistent with the often expressed view that the law abhors a forfeiture, no-contest provisions are looked upon with some disfavor and have been strictly construed. . . . A breach of a forfeiture clause will be declared only when the acts of a party comestrictly within its expressed terms.'"848 So.2d at 955 (quoting Claudia G. Catalano, Annotation, WhatConstitutes Contest or Attempt to Defeat Will Within ProvisionThereof Forfeiting Share of Contesting Beneficiary, 3 A.L.R. 5th 590 § 2[a] (1992) (emphasis added)).
The in terrorem provision consists of three sentences. Some form of the word "distribute" appears four times in the provision, at least once in each sentence. In Kershaw, this Court examined the implications of the use of the term "distribute" in the context of estate administration.
Kershaw involved an in terrorem clause in the will of Miriam M. Kershaw; that clause stated, in pertinent part:
 "`If either of my sons in any manner, directly or indirectly, contests or attacks the validity of this Will or the validity of any trust . . . or any disposition made under this Will or under any Trust . . . by filing suit against my executor or the trustee of any trust created by me or otherwise, then any share or interest given to such son . . . shall be disposed of in the same manner as if such son and all of his descendants had predeceased me.'"
848 So.2d at 951 (emphasis added). The issue was whether Knox Kershaw, one of Miriam Kershaw's sons and one of two beneficiaries under her will, had violated that clause by commencing of an action to determine, among other things, the "proper use of proceeds from life insurance policies on Mrs. Kershaw's life." 848 So.2d at 947. Under Knox's theory, the proceeds should have been used to buy and convert to cash outstanding stock in the family business, which stock otherwise passed under the will to one of three inter vivos trusts, resulting in a diminution of the share of the estate passing to Knox under the will. Id.
The trial court held that Knox had violated the interrorem clause, resulting in a forfeiture of his share of the estate. It concluded that "Knox's litigation constituted . . . `an effort to change distributions,'" because "different amounts would be distributed to the two beneficiaries if [Knox] prevailed on . . . his claims with respect to the use of the proceeds of the life insurance policies." 848 So.2d at 949 (emphasis added). This Court reversed the trial court's judgment, explaining that the source of the trial court's error lay in its "conflation of the termsdistribution and disposition."848 So.2d at 953 (emphasis added).
We pointed out that under well-established and widely understood principles, the "distribution of estate assets is a function of the executor or administrator — not the testator," while a "testamentary disposition" is "the function of the testator." 848 So.2d at 952 (emphasis added). On that basis, we concluded that Knox had not "`directly or indirectly, contested] or attacked] . . . anydisposition made under [the] Will'" 848 So.2d at 953
(emphasis added). This was so, because his "challenges [left] intact the formulas in the . . . will; they affect[ed] only the amount of the payout," that is, the distribution, "when those formulas were applied to the assets." 848 So.2d at 953. In other words, a challenge *Page 461 
to the manner of distribution did not implicate the proscription on challenges todisposition. Thus, Knox's challenge to the manner of distribution of certain assets did not amount to a challenge to the validity of the will itself.
This case is the converse of Kershaw in that, here, the in terrorem provision purports to proscribe disputes regarding distribution, rather than disposition, and the will contest filed by Morrow and Anderson challenged the disposition, rather than the distribution, of the assets. The first sentence refers to the distribution of specific bequests: "If any bequest requires that the bequest bedistributed between or among two or more beneficiaries, the specific items of property
comprising the respective shares shall be determined by such beneficiaries if they can agree, and if not, by my Executor." (Emphasis added.)
Sentence two carries the subject of sentence one a step further: "Any further dispute between or among the beneficiaries regarding distribution percentages or procedures shall permanently disqualify that person from any distribution." (Emphasis added.) Sentence two does not broaden the scope of sentence one. This is so, because it refers only to "further dispute[s]," that is, disputes of the same class as are the subject of sentence one. Also, sentence two contains an additional clarifying clause, which is the phrase "regardingdistribution percentages or procedures." (Emphasis added.) This clause further illustrates that the interrorem provision refers to the distributive acts ofthe executor, rather than to the dispositional acts ofthe testator.
Finally, sentence three is essentially a restatement of sentence two, with the addition of specific instructions as to the procedure to be followed with regard to that portion of the bequest forfeited by the beneficiary contesting the bequest: "If a bequest is contested this share shall be distributed proportionately to the other distributee(s) listed as beneficiaries." In other words, that bequest is to be apportioned between or among the remaining beneficiaries of that bequest.
Regarding sentence three, Harrison argues:
 "The acts of [Morrow and Anderson] come strictly within the expressed terms of the in terrorem
clause contained in the will . . . in the second and third sentences in that the contest has the legal effect of disputing the entire will and violates the third sentence in that once again, the contest for any reason has the legal effect of contesting all bequests contained in the will, for if the contest is successful and the will is set aside, there will be no bequest as the Testator . . . intended and the estate . . . will pass under intestate succession."
Harrison's brief, at 41 (emphasis added) (citations to the record omitted).
Harrison's reasoning is faulty in a number of respects. First, his construction of sentences two and three ignores the narrowly drawn language limiting the scope of the provisions to specific bequests requiring distribution "between or among two or more beneficiaries." Second, it fails to acknowledge the fundamental distinction between a challenge to the distribution of a specific bequest and a contest of the will as a whole. That a contest can arise over the distribution of a specific bequest without implicating the entire will is amply illustrated by Kershaw. A provision, such as the one involved in Kershaw, purporting to prohibit a will contest does not necessarily prohibit a challenge to a specific bequest. Conversely, there is no reason why a testator could not, or would not, narrowly draft a provision that prohibits a beneficiary from contesting only the distribution of certain specific bequests, *Page 462 
without disinheriting that beneficiary altogether if he or she challenges the overall validity of the will. Third, if sentence three prohibits an attack on the will as a whole, as Harrison contends, then sentence three entirely subsumes sentences one and two and renders them nugatory. In effectuating the intent of the testator, however, this Court must "giv[e] effect to each provision where it is possible to do so." Born v. Clark, 662 So.2d 669 (Ala. 1995). Fourth, Harrison's argument for the broadest possible sweep of the provisions conflicts with the rule articulated inKershaw, namely, that in terrorem clauses, to the extent they may be enforced in Alabama, are to be construed narrowly to avoid a forfeiture. 848 So.2d at 955.
 III. Conclusion
Well-established rules of testamentary interpretation compel the conclusion that the in terrorem provision in Alton Anderson's will prohibits only challenges to procedures for the distribution of specific bequests and percentages thereof, not to a contest of the will itself. The contest application filed by Morrow and Anderson, however, challenged the disposition of the estate, rather than the distribution of specific bequests. Consequently, the will contest commenced by Morrow and Anderson was not within the purview of the in terrorem
provision in this case. Because the trial court did not err in entering its judgment in favor of Morrow and Anderson, that judgment is affirmed.
AFFIRMED.
LYONS, STUART, SMITH, and PARKER, JJ., concur.
COBB, C.J., and SEE, BOLIN, and MURDOCK, JJ., concur in the result.
[1] In keeping with the practice of the testator and the parties, we will use the terms "bequests" and "beneficiaries" throughout this opinion, rather than the statutory terms "devises" and "devisees." See Ala. Code 1975, § 43-8-1(5) and (6).
[2] "An in terrorem clause is `[a] provision designed to threaten one into action or inaction; esp., a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will.'" Kershawv. Kershaw, 848 So.2d 942, 944 n. 1 (Ala. 2002) (quotingBlack's Law Dictionary 825 (7th ed. 1999)).
[3] The parties agree that only two Alabama cases have heretofore involved in terrorem clauses: Kershawv. Kershaw, 848 So.2d 942 (Ala. 2002), and Donegan v.Wade, 70 Ala. 501 (1881). Neither case directly involved an issue regarding the enforceability of in terrorem
clauses per se. Kershaw, 848 So.2d at 950.